PEOPLE v. ST. JOHN.

PERJURY—"ONE-MAN GRAND JURY"—EQUALLY DIVIDED COURT.
Conviction of perjury by witness at so-called "one-man grand jury" is affirmed by an equally divided court (3 Comp. Laws 1929, §§ 17217–17220, 17287; Act No. 328, §§ 422, 423, Pub. Acts 1931).

Appeal from Genesee; Brown (William B.), J., presiding. Submitted January 26, 1938. (Docket No. 142, Calendar No. 39,724.) Decided April 4, 1938. Rehearing denied June 14, 1938.

Earl St. John was convicted of perjury. Affirmed by an equally divided court.

*Beagle & Beagle* and *Stockton, Cline & George,* for appellant.

*Raymond W. Starr,* Attorney General, and *Joseph R. Joseph,* Prosecuting Attorney, for the people.

BUSHNELL, J. Upon petition of the prosecuting attorney, in which he alleged—"that certain crimes and offenses have been committed in Genesee county, Michigan, and that certain persons may be able to give material evidence respecting such crimes and offenses," the circuit court ordered a "one-man grand jury" hearing and directed "that all witnesses whose names are known to said prosecuting attorney shall be subpœnaed to attend," etc., on the 15th day of July, 1936.

On September 4th following, Circuit Judge Gadola, who had been sitting as the "one-man grand jury," entered an order commanding the sheriff to arrest defendant Earl St. John. The order recited that St. John had appeared before the court in the above proceedings on August 25th, had been duly sworn, and committed perjury. This charge was based upon the statement in the order that questions were put to St. John, to which he made the sworn answers as follows:

"*Q.* Now, do you have any personal knowledge of any activities of what is known as the black legion?

"*A.* I do not.

"*Q.* Are you a member?

"*A.* I am not.

"*Q.* Have you ever attended any meetings?

"*A.* I have not. I was taken to a place one night, and the fellow that was with me said he did not think he would go with the fellow.

"*Q.* Did you ever take an oath in this so-called black legion?

"*A.* No, sir. I told you I never was in the black legion; I never was to a meeting.

"*The Court:* Did you ever attend a meeting at grange hall?

"*A.* No, sir.

"*Q.* Or on a farm in Lapeer county?

"*A.* You remember now there are other St. Johns around here. Maybe you have got the wrong one.

"*Q.* You never attended a meeting around Argentine, on the lake?

"*A.* No, sir.

"*Q.* Never been to a meeting in the north end in a basement?

"*A.* No, sir.

"*Q.* Never held any office in the black legion?

"*A.* No, sir. I tell you I do not belong to the black legion; I do not believe in it.

"*The Court:* If there is an Earl St. John, a lieutenant colonel in the black legion, it is not you?

"*A.* It is not me. I tell you right now, I do not belong in that kind of position."

The order then stated that such testimony was material to the inquiry before Judge Gadola and that it appeared to him that St. John's testimony was false—"in that at the time and place of testifying, he had knowledge of the activities of the black legion; he was a member of the black legion; he had attended meetings of the black legion; he took an oath in the black legion; he attended a meeting of the black legion at a grange hall; he attended a meeting of the black legion on a farm in Lapeer county; he attended a meeting of the black legion at a lake near Argentine; he was an officer in the black legion."

Upon being brought before Judge Black of the same circuit, St. John waived examination and was held for trial. An information was filed in which the testimony heretofore quoted was repeated in detail and the claimed falsity thereof stated as aforesaid. Defendant's demand for a bill of particulars was denied, as was his demand for "a complete transcript of all the proceedings taken" before Judge Gadola, sitting as a grand jury. Defendant also filed a motion to dismiss, based upon certain claims, some of which are renewed upon appeal. Testimony was taken and the jury determined that defendant was guilty as charged in the information.

Defendant asks that his conviction be set aside because the prosecutor's petition for the investigation did not contain sufficient allegations of fact to permit the circuit judge to suspect that a crime had been committed within his jurisdiction; if the grand jury was not properly called under the statute, Judge Gadola did not have jurisdiction to investigate the

matters referred to in the information; since no particular issue or crime was before him for investigation, the alleged false testimony could not have been material, and because the trial court erred in denying defendant's request for transcript of the proceedings prior to trial and for a bill of particulars. Defendant further says that, even if he is in error as to all of these claims, nevertheless the testimony taken at the trial was not sufficient to warrant finding him guilty. of perjury.

The regularity and propriety of so-called grand jury proceedings under 3 Comp. Laws 1929, §§ 17217, 17218 (Stat. Ann. §§ 28.943, 28.944), were questioned and upheld in *People* v. *Wolfson,* 264 Mich. 409; *Mundy* v. *McDonald,* 216 Mich. 444 (20 A. L. R. 398); *People* v. *Doe,* 226 Mich. 5.

Defendant contends, however, that the statute just cited, authorizing this procedure, requires that the petition of the prosecuting attorney contain a detailed statement of the nature of the crimes to be investigated. This is not our understanding of the provisions of the statute. Its very purpose, as set forth in the title, is "to authorize proceedings for the discovery of crime." See Act No. 196, Pub. Acts 1917.* It provides a remedy for exactly the situation where the nature of the suspected crimes and the person or persons who committed them are not known. It would be necessary to impute to the legislature the enactment of a meaningless formality to hold that the statute requires the prosecutor to set forth the nature of the crime or crimes, since under the act the witness must "answer such questions as such justice or judge may require concerning *any*

---

* This statute, from which a quotation of a portion of the title appears, has been re-enacted as a part of the code of criminal procedure (3 Comp. Laws 1929, §§ 17217–17220 [Stat. Ann. §§ 28.943–28.946]).—REPORTER.

*violation of law* about which he may be questioned."
3 Comp. Laws 1929, § 17217 (Stat. Ann. § 28.943).
Furthermore, the very nature of the proceedings
might in some instances require the utmost secrecy
as to purpose in order to assure the detection and
apprehension of law violators. The power thus
granted the examining magistrate is analogous to
the power of the old grand jury to make independent
inquiry into offenses as to which no formal bill of
indictment had been filed by the prosecuting officer.
See *Bennett* v. *Kalamazoo Circuit Judge,* 183 Mich.
200, 205 (Ann. Cas. 1916 E, 223).

The proceedings being authorized by law, and it
not being necessary to state in the petition the de-
tailed nature of the investigation, Judge Gadola did
have jurisdiction to investigate into any crimes that
might be brought to his attention; and since the
existence of the so-called black legion in his jurisdic-
tion was being investigated, the questions put to
St. John and his answers thereto were material to
the matter then pending before the court.

Our attention has not been directed to any author-
ity sustaining the right of defendant to be furnished
with a copy of the transcript of the grand jury pro-
ceedings prior to trial or at any other time. There
is, however, authority to the contrary. See *People*
v. *Prevost,* 219 Mich. 233. We note the following in
appellee's brief:

"We do not believe that the appellant will deny
the facts, that during the course of the trial a copy
of these proceedings was furnished appellant at his
request. He was given a copy of all the proceedings
that he deemed necessary at that time."

This statement has not been challenged by appel-
lant

Defendant also complains because he was refused a bill of particulars. The information charged that the statements made before the grand jury were false because, at the time and place of testifying, defendant knew certain things and had done certain things. The gist of the offense was that he stated to Judge Gadola during the investigation that he had never done these "certain things" and knew nothing whatever about them. It is evident that the defendant did not desire more specific allegation of the charge but rather a disclosure of the people's evidence.

"Failure to order a bill of particulars constitutes reversible error only in the event of an abuse of discretion which results in the defendant being deprived of a fair trial." *People* v. *Tenerowicz,* 266 Mich. 276.

See, also, *People* v. *Schneider, Jr.,* 345 Ill. 410 (178 N. E. 84).

Defendant says the testimony was not sufficient to warrant finding him guilty of perjury but he does not brief the question. We might pass this on the general proposition that questions not argued in the brief are considered to be abandoned. *Johns* v. *Wisconsin Land & Lumber Co.,* 268 Mich. 675. But we prefer to accord full consideration to defendant's claims in this particular. There can be no doubt, after reading the testimony, that St. John knew the purpose of the inquiry being conducted by Judge Gadola. At his trial he took refuge in the position that, although he belonged to an organization known to him as the "black knights" or "night riders," he did not know that it was generally known as the "black legion." He did admit, however, that a friend of his told him that the organization was

known as the "black legion" and that he replied,
"forget it." He admitted that he had read in the
newspapers that the grand jury was investigating
the activities of the "black legion," and that when
the court used the words "black legion" he knew
what the court was talking about.

The following questions and answers are indica-
tive of defendant's knowledge of the information
desired from him under oath, which he refused to
give:

"*Q.* You knew you were a member of the order
at that time?

"*A.* I knew I was a member of what he called,
termed black legion.

"*Q.* You knew you were a member of what he
called, termed the black legion; you knew you were
a member at that time?

"*A.* Of what he termed was the black legion.
*    *    *

"*Q.* I am asking you specifically, Mr. St. John,
did you ever take an oath in the so-called black
legion?

"*A.* Did I ever take an oath in the so-called black
legion?

"*Q.* Yes.

"*A.* I did.

"*Q.* You did?

"*A.* I did.

"*Q.* Did you ever attend any of their meetings?

"*A.* So-called black legion?

"*Q.* Yes.

"*A.* Yes, sir.

"*Q.* You can say so-called or otherwise. Then
when you appeared before the grand jury, before
Judge Gadola, Mr. Transue the prosecuting attorney
at that time, you knew of the activities of this organ-
ization about which you were being interrogated?

"*A.* To which I belonged at that time; yes, I
knew the activity.

"*Q.*   Knew about their activities?

"*A.*   But I did not know anything about the black legion.

"*Q.*   Did you ever attend a meeting of this so-called black legion on a farm in Lapeer?

"*A.*   Yes, sir.

"*Q.*   Did you ever attend a meeting around Argentine, on the lake?

"*A.*   Yes, sir."

The judgment entered upon the conviction is affirmed.

BUTZEL, CHANDLER, and McALLISTER, JJ., concurred with BUSHNELL, J.

WIEST, C. J.   I am constrained, by applicable principles of law, to hold the proceeding, in the course of which the alleged perjury was committed, a nullity and, therefore, the oath therein administered of no legal cognizance.

The statute (Act No. 328, § 422, Pub. Acts 1931 [Comp. Laws Supp. 1935, § 17115–422, Stat. Ann. § 28.664]), provides punishment for "Every person who, being lawfully required to depose the truth in any proceeding in a court of justice, shall commit perjury," etc.

Section 17287, 3 Comp. Laws 1929 (Stat. Ann. § 28.1013), relating to indictments for perjury, departs from the common law, in that it makes it unnecessary to allege the authority of the court or other authority before whom the perjury was committed.

This, however, does not dispense with proof of a legal proceeding in which an oath can be lawfully required.

The statute, 3 Comp. Laws 1929, § 17217 (Stat. Ann. § 28.943), under which the prosecuting attorney and the circuit judge assumed to act, provides:

"Whenever by reason of the filing of any complaint, which may be upon information and belief, any justice of the peace, police judge or judge of a court of record shall have probable cause to suspect that any crime, offense, misdemeanor or violation of any city ordinance shall have been committed within his jurisdiction, and that any person may be able to give any material evidence respecting such offense, such justice or judge in his discretion may, and upon the application of the prosecuting attorney,  *  *  * shall require such person to attend before him as a witness and answer such questions as such justice or judge may require concerning any violation of law about which he may be questioned."

The record contains a petition by the prosecuting attorney to the circuit judge stating:

"That he is informed and believes that certain crimes and offenses have been committed in Genesee county, Michigan, and that certain persons may be able to give material evidence respecting such crimes and offenses.

"That the list of said witnesses who are supposed to have certain knowledge of the said material facts will be furnished said court and will be subpœnaed to give testimony should the order hereinafter prayed for be made.  *  *  *

"Your petitioner, therefore, prays that an order will be made authorizing and requiring the persons whose names are included in said above mentioned list, which is to be furnished by said petitioner herein, to appear before said court as witnesses and answer such questions as said court may require concerning any violations of the law about which they may be questioned."

As hereinafter pointed out that did not constitute a criminal complaint.

Upon filing such petition the court entered an order that:

"All witnesses whose names are known to said prosecuting attorney shall be subpœnaed to attend before me as witnesses at the time (July 15, 1936) and place herein mentioned and answer such questions as required by the judge before whom said proceedings may be held, concerning any violations of law about which said witnesses may be questioned."

Except within authority of the mentioned statute the proceeding was unknown to the law and a nullity. Statutory authority, if not followed, lends no validity to the proceeding.

The statute required, as the first step, the filing of a "complaint," upon which the judicial officer could make a finding of probable cause to suspect the commission of a definite crime.

The term "complaint," as employed in the statute, has a well understood meaning in criminal procedure and serves an essential function. It means an averment or charge of commission of a specified offense. The complaint may state inability to name an offender but it must allege the commission of a specified crime in order to start a judicial investigation as to identity of the violator and in order that he may be apprehended and brought to trial.

The proceeding is purely statutory in origin and scope, and jurisdiction to act at all rests upon a complaint of the commission of an alleged crime.

It is somewhat of a misnomer to term the proceedings a "one man grand jury," for it is special and does not confer the general powers of a grand jury. The statute provides for a special investigation under a complaint of the commission of an al-

leged crime; it does not authorize a grand inquest, with power of roving inquiry and presentment of offenders generally. When the statutory authority is properly invoked it operates in a specific instance as an aid toward bringing criminal offenders to trial.

In the instant case the "petition" alleged no crime or issue upon which to summon witnesses. It was not a criminal "complaint" within the provisions of the statute, and all action taken and proceedings thereunder were a nullity.

Defendant moved to quash the information, claiming the alleged tribunal was without jurisdiction and—"That there was no crime or issue under investigation at the time and place the testimony referred to in the information was given." The motion was denied. The same grounds were urged at the trial, and for a new trial, and denied.

Was the oath administered in a proceeding in a court of justice (Act No. 328, § 422, Pub. Acts 1931 [Comp. Laws Supp. 1935, § 17115–422, Stat. Ann. § 28.664]), or authorized or required by law (Act No. 328, § 423, Pub. Acts 1931 [Comp. Laws Supp. 1935, § 17115–423, Stat. Ann. § 28.665])? If not, then defendant was not guilty of perjury, even though he deliberately lied.

While it was not necessary for the information to state the authority under which the power was assumed, it was necessary, at the trial, to establish the validity of the special proceeding when issue thereon was presented.

"The jurisdiction of the court or tribunal over the proceedings in which the alleged perjury was committed must be proved." 48 C. J. p. 887.

If there was no jurisdiction there was no perjury.

"In accordance with the rule that the court, tribunal, or officer must have jurisdiction, it is settled that

perjury or false swearing cannot be committed in proceedings void for want of jurisdiction." 48 C. J. p. 849.

In 1 Hawkins' Pleas of the Crown (6th Ed.), p. 321, it was said:

"It seemeth clear, that no oath whatsoever taken before persons acting merely in a private capacity, or before those who take upon them to administer oaths of a publick nature, without legal authority for their so doing, or before those who are legally authorized to administer some kinds of oaths, but not those which happen to be taken before them, or even before those who take upon them to administer justice by virtue of an authority seemingly colourable, but in truth unwarranted and merely void, can ever amount to perjuries in the eye of the law, because they are of no manner of force, but are altogether idle."

In *People* v. *Titmus*, 102 Mich. 318, defendant was prosecuted for perjury. He was subpœnaed to appear before a justice of the peace to give testimony in an alleged criminal prosecution. He appeared and was examined upon oath, and accused, tried and convicted of perjury. It appeared in that case that no complaint had been made.

The court, in discharging the defendant, quoted the following from *People* v. *Fox*, 25 Mich. 492:

" 'There must be an oath authorized by law, an issue or cause to which facts were material, and a false statement regarding such facts upon such issue or in such cause. Such would be the case at the common law, and, if it be claimed that this is statutory perjury, the information is not aided, for, by the statute, it must appear that the oath is one required or authorized by law.' "

The petition of the prosecuting attorney was wholly ineffectual to confer jurisdiction for it failed to charge the commission of a specific criminal offense.

The conviction should be reversed and defendant discharged.

SHARPE, POTTER, and NORTH, JJ., concurred with WIEST, C. J.