No. 88-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

JAMES ROBERT HOUCHIN,

Defendant and Respondent.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Susan Loehn, County Attorney, Libby, Montana
Scott B. Spencer, Deputy, County Attorney
Hon. Mike Greely, Attorney General, Helena, Montana

For Respondent:

David W. Harman, Libby, Montana

Submitted on Briefs: Oct. 6, 1988

Decided: December 15, 1988

Filed:

_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal involves alleged conspiracy to commit deliberate homicide, a felony. The State of Montana appeals from the order of the Nineteenth Judicial District, Lincoln County, denying the State's motion to file an information direct against James Robert Houchin (Houchin). We reverse.

The State presents one issue on appeal: whether the defense of impossibility exists in conspiracy cases.

During the course of an undercover fish and game investigation, a man named Kenneth DeBoer told an undercover agent he could arrange to have a person killed if the agent so desired. The agent investigated this statement and found that DeBoer could arrange for the services of a "hit man" to do a requested killing. The agent later told DeBoer he did in fact wish to have a man killed, and arranged a meeting with DeBoer and the hit man.

The agent, DeBoer and Houchin were present at the meeting. The agent surmised from what was said and done that Houchin was the hit man. The agent gave DeBoer a photograph and description of a man he said he wanted killed. The State and Houchin agree that the man to be killed was fictitious. Upon reaching agreement that the killing would be done, the agent gave DeBoer $5,000 for the "job". DeBoer and Houchin were arrested shortly after the meeting.

Houchin was charged by complaint with conspiracy to commit deliberate homicide, a felony. The State asked the District Court for leave to file an information direct against Houchin and filed an affidavit in support of its request. The court denied the State's request, holding that because the man to be killed was fictitious, the defense of impossibility applied. This appeal followed.

2

Conspiracy is defined in Montana by § 45-4-102, MCA:

> A person commits the offense of conspiracy when, with the purpose that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement has been committed by him or by a coconspirator.

The State points out in its brief that the defense of impossibility as it relates to this statute has not been addressed in Montana case law. Houchin's argument to the District Court was based largely on statutory language. Houchin argued, and the court agreed, that he could not have conspired to commit deliberate homicide because § 45-5-102, MCA, defines deliberate homicide in terms of causing the death of a human being. A human being is defined in § 45-2-101(27), MCA, as a person who has been born and is alive. Because the man to be killed was fictitious, Houchin concluded, he did not come within the definition of a human being, which precluded a conspiracy to make him the victim of deliberate homicide. We disagree.

The crime of conspiracy as defined above requires the presence of two elements: (1) a knowing and purposeful agreement to commit an offense, and (2) an act in furtherance of the agreement. The actual commission of the offense that is the object of the conspiracy is not required. See, e.g., Iannelli v. U.S. (U.S. 1975), 420 U.S. 770, 95 S.Ct. 1284 (the essence of conspiracy is an agreement to commit an unlawful act); 16 AmJur Conspiracy § 3 (in conspiracy law, the focus is primarily on the purpose of the conspirators); Comment, Conditional Objectives of Conspiracy (1985), 94 Yale L.J. 895, (the function of conspiracy law is not to punish offenders for what they do, but for what they agree to do).

3

Moreover, the State notes that Montana's conspiracy statute is derived from Illinois law, and Illinois cases can be used as a guide to its interpretation. Cases from Illinois hold conspiracy to be a crime separate and distinct from the act that is the object of the conspiracy. Its gravamen is an agreement to accomplish an unlawful purpose. People v. Brouilette (Ill.App. 1968), 236 N.E.2d 12; People v. Peppas (Ill. 1962), 182 N.E.2d 228. The focus of our inquiry is thus the agreement to do the act.

The defense of impossibility can take two forms: legal and factual. Legal impossibility exists when the contemplated act, if committed, would not be an offense. Factual impossibility exists when the contemplated act is an offense, but it cannot be carried out due to facts unknown to the conspirators. The majority rule is that impossibility of either kind is no defense to conspiracy. See, W. LaFave & A. Scott, Substantive Criminal Law (1986), § 6.5 at 90-93.

However, the language of Montana's conspiracy statue appears to contemplate the defense of legal impossibility by requiring that the plan be for the purpose of committing an "offense." The Criminal Law Commission comments to § 45-4-102, MCA, state that a defense would be available to conspiracy if the act that was the object of the conspiracy was not an offense. If the contemplated act were not an offense, then the first element of conspiracy would be missing; the conspirators' agreement would not be for the purpose of committing an offense.

While legal impossibility is contemplated by § 45-4-102, MCA, factual impossibility is inconsistent with the statute. As we stated above, the focus of conspiracy law is the agreement. The actual commission of the offense is immaterial if the elements of conspiracy are present. We

4

therefore hold that legal impossibility is a defense to conspiracy, but factual impossibility is not.

This is a case of factual impossibility. While the intended victim of the deliberate homicide was fictitious, there appears to be a basis for proving the elements of conspiracy. Based on the undercover agent's observations, Houchin arguably participated in a knowing and purposeful agreement to commit deliberate homicide. He was present at the meeting where the agreement was reached, and indications were that he was the hit man. When DeBoer accepted the $5,000 payment, an overt act in furtherance of the agreement was committed. The fact that the homicide could not have been carried out is immaterial.

We hold the District Court was incorrect in denying the State's request on the basis of impossibility. We reverse, and remand with instructions to the court to allow the State to file an information direct against Houchin.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

5

Mr. Justice William E. Hunt, Sr., dissenting.

I dissent. There are some disturbing things about this case including the majority's reliance on formalistic distinctions between legal and factual impossibilities--distinctions that should have been thrown out of our jurisprudence long ago. I find just as disturbing the fact that a Fish and Game undercover agent, investigating poaching and trafficking in parts of illegally-taken game, learns about a "hit man" in the area. The Fish and Game agent arranges for the hit man to eliminate a tax man who is apparently causing some tax problems for the agent. Pure fiction!

But aside from all of that, the District Judge correctly distinguished the Montana "attempt" statute from the "conspiracy" statute. The attempt statute provides that an accused may be convicted of a crime even though the crime is impossible to commit. The conspiracy statute, on the other hand, provides that an accused must act with "the purpose that an offense be committed." Section 45-4-102(1), MCA. The conspiracy statute thus requires that the crime conspired to must be possible to commit.

Montana statute § 45-5-102, MCA, states that deliberate homicide is the causing of the death of a human being. A human being is defined as a person who has been born and is alive. It is impossible to kill a person who does not exist, or is already dead. It is also impossible to conspire to kill a non-person.

In this case, the victim of the alleged conspiracy did not exist. Therefore, no offense has been committed. I would affirm the District Court Judge.

_____
Justice

6

I concur in the foregoing dissent.

_____
John L. Shelby
Justice